IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Germantown Cab Company,       :
       Appellant     :
       :
       v.       :   No. 993 C.D. 2016
       :   Submitted: November 10, 2016
Philadelphia Parking Authority   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
       HONORABLE ANNE E. COVEY, Judge
       HONORABLE DAN PELLEGRINI, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT       FILED: March 6, 2017

Germantown Cab Company (Germantown Cab) appeals an order of the Court of Common Pleas of Philadelphia County (trial court) upholding the fine imposed by the Philadelphia Parking Authority, Taxicab and Limousine Division (Parking Authority). Germantown Cab contends that the trial court erred because the Parking Authority does not regulate limited service taxicabs operating pursuant to a certificate of public convenience issued by the Pennsylvania Public Utility Commission (PUC).

On March 8, 2014, John Broggi, of the Parking Authority's Enforcement Department, issued a citation to Germantown Cab for not equipping one of its taxicabs with a protective shield, as required by Section 1017.5(b)(12) of Title 52 of the Pennsylvania Code.[1] Germantown Cab contested the citation.

---

[1] It requires, in relevant part that:

> (12) A taxicab must be equipped with a protective shield which separates the front seat from the back seat and bears the manufacturer's name. The protective shield must meet the following minimum requirements:
>
> > (i) The upper portion of the shield must extend from the top of the front seat to a point not more than 3 inches from the ceiling of

**(Footnote continued on the next page . . .)**

The hearing was scheduled for October 14, 2014. Thereafter, Germantown Cab requested several continuances, which were granted. When Germantown Cab did not appear at the March 11, 2015, hearing, rescheduled at its request, the Hearing Officer went forward with the hearing.

---

**(continued . . .)**

the vehicle and must be constructed of a clear, see-through, bullet-resistant material.

(ii) The shield must have either a sliding window controlled by the vehicle operator and capable of being locked by the driver or a payment exchange cup or tray or similar device which allows the operator to receive payment from passengers in the back seat of the vehicle without unduly exposing the vehicle operator to danger.

(iii) The upper portion of the shield may not obstruct the vehicle operator's view of the road to the rear of the vehicle.

(iv) The lower portion of the shield must extend the full length of the front seat and be constructed of a bullet-resistant material.

(v) Both the upper and lower portions of the shield must extend from a point flush with the left-hand side of the vehicle across the vehicle to a point flush with the right-hand side of the vehicle.

(vi) The shield may not have an edge or projection protruding into the area where a passenger or driver will sit or move.

(vii) The lower portion of the shield must be installed in a manner which complies with the legroom requirements in paragraph (2).

(viii) The shield must be installed in a manner which does not prevent voice communication between the vehicle operator and passengers in the vehicle.

(ix) The shield must be installed in a manner which allows heat and air conditioning to maintain the taxicab's temperature at levels required under paragraph (19).

(x) The shield must be sufficiently transparent to allow a passenger to easily read the meter and the taxicab driver's certificate.

52 Pa. Code §1017.5(b)(12).

Broggi, the sole witness, testified that on March 8, 2014, he saw a Germantown taxicab operating westbound on Spring Garden Street in Philadelphia. The taxicab's dome light was on, which indicated that it was available for passengers. When he pulled the vehicle over, he found that the taxicab had a "functioning meter in the taxicab in the cartridge on the dashboard. It appeared to be ready to go." Notes of Testimony (N.T.), 3/11/2015, at 7; Reproduced Record at 13 (R.R. ___). Broggi found several problems. The taxicab did not have a sticker issued by the Parking Authority; the tire in the trunk was not covered; and it did not have a protective shield between the driver and passenger compartment. Broggi issued a citation solely on the absence of a protective shield.

Based on this record, the Hearing Officer, on behalf of the Parking Authority, held that Germantown Cab failed to equip its taxicab with a protective shield as required by 52 Pa. Code §1017.5(b)(12). It ordered Germantown Cab to pay a civil penalty of $350.00, along with an administrative fee of $75.00, for a total of $425.00.

Germantown Cab appealed to the trial court, and on February 25, 2016, the trial court heard argument.[2] Germantown Cab explained its appeal as follows:

> [The Parking Authority has] jurisdiction to issue citations, but one of the threshold issues that this Court and the court below has to determine is whether or not under the particular fact pattern as they've set up their regulatory scheme, did it apply. Did it apply to this trip?

---

[2] The trial court heard three Germantown Cab appeals at the same time, including the instant case.

N.T., 2/25/2016, at 20.[3]  In short, Germantown Cab did not dispute the factual findings made in the hearing before the Parking Authority.

The trial court affirmed the Parking Authority.  The trial court agreed that Germantown Cab was able to provide service in Philadelphia "as specifically provided for in [its] PUC certificate."  Trial Court op., 5/13/2016, at 2.  It found that Germantown Cab's PUC certificate allows

> call or demand *between points in the city of Philadelphia*, bounded by School House Lane, Church Lane, Wister Street, Stenton Avenue, Northwestern Avenue, Ridge Avenue, Manatawanna Avenue, Hagys Mill Road, Port Royal Avenue, Cross Street, Shawmont Avenue, Umbria Street, Parker Avenue, Ridge Avenue, Walnut Lane, Wissahickon Avenue to points of beginning: *and that portion of Whitemarsh Township, Montgomery County*, bounded as follow: beginning on Ridge Pike, at the Springfield Township Line, northwest on Ridge Pike to Butler Pike, northeast on Butler Pike to the Whitemarsh Township line, southeast, along the Whitemarsh Township Line to Bethlehem Pike, south on Bethlehem Pike to Valley Green Road, northeast on Valley Green Road to the Whitemarsh Township Line, southwest along the Whitemarsh Township Line to Ridge Pike; *and that portion of Springfield Township, Montgomery County*, bounded as follows: beginning at the Springfield Township Line and Mermaid Lane, southwest on Mermaid Lane to Stenton Avenue, northwest on Stenton Avenue to the Springfield Township line, northeast, southeast, southwest and southeast along the Springfield Township Line to Mermaid Lane *and from points in the said area to points outside the area and vice versa*.

*Id.* at 2 n.2 (emphasis added).  Accordingly, where Germantown Cab operates within the above-quoted certificate, the trial court held that the Parking Authority may not require Germantown Cab to install a protective shield.  The trial court

---

[3] The transcript is attached to the Parking Authority's Brief at Exhibit A.

reasoned that it would impose an unreasonable hardship on Germantown Cab to comply both with regulation by the Parking Authority and with regulation by the PUC, particularly where they conflict. However, the trial court held that where a partial rights taxicab operates outside of its PUC certificate, the Parking Authority may impose its operational regulations upon the errant taxicab.

The trial court discerned no dual regulation jurisdiction problem because Germantown Cab was not operating within the parameters set forth in its PUC license. As such, it could be held liable for not having a protective shield.

Germantown Cab now appeals to this Court.[4] It contends that the trial court erred in holding that the taxicab was providing service outside of the scope of its PUC certificate. Accordingly, it cannot be fined for not having a protective shield.

Section 5714 of the act commonly known as the Parking Authority Law, 53 Pa. C.S. §§5701-5745, sets forth the rights of limited service taxicabs as follows. Pursuant to a 2012 amendment,[5] Section 5714(d) states as follows:

> (d)  Other vehicles.—
>
> > (1) *A vehicle* which is not authorized by a certificate to provide call or demand service within cities of the first class but *which is operated by the holder of a certificate of public convenience from the Pennsylvania Public Utility Commission authorizing call or demand service elsewhere in*

---

[4] The Authority functions as a Commonwealth agency in cases involving taxicabs. *Rosemont Taxicab Co., Inc. v. Philadelphia Parking Authority*, 68 A.3d 29, 35 n.6 (Pa. Cmwlth. 2013). Our review is limited to determining whether constitutional rights were violated, agency procedures were violated, an error of law was committed, and whether the findings of fact are supported by substantial evidence. *Id*.

[5] Act of July 5, 2012, P.L. 1022.

*this Commonwealth may transport persons and property*:

> > (i) to cities of the first class in accordance with the service authorized under its certificate of public convenience; and
>
> > (ii) from any point in a city of the first class to any point in this Commonwealth beyond that city of the first class if the request for service for such transportation is received by call to its radio dispatch service.

> (2) *Carriers authorized by the authority to provide taxicab service to designated areas within cities of the first class on a non-citywide basis* pursuant to section 5711(c)(2.1) (relating to power of authority to issue certificates of public convenience) shall *retain their authorization in those areas of a city of the first class subject to the exclusive jurisdiction* of the authority and orders and regulations of the authority issued under this chapter. *The authority shall not grant additional rights to new or existing carriers to serve designated areas within cities of the first class on a non-citywide basis*.

53 Pa. C.S. §5714(d) (emphasis added).[6] Prior to the 2012 amendment, Section 5714(d) stated as follows:

> (d) Other vehicles.—

---

[6] Section 5711(c)(2.1) states:

> The authority may issue no more than six certificates of public convenience for non-citywide call or demand service in any city of the first class, subject to the exclusive jurisdiction of the authority.

53 Pa. C.S. §5711(c)(2.1), *added by* Section 3 of the Act of July 5, 2012, P.L. 1022.

(1) A vehicle which is not authorized by a certificate to provide call or demand service within cities of the first class but which is operated by the holder of a certificate of public convenience from the Pennsylvania Public Utility Commission authorizing call or demand service elsewhere in this Commonwealth may transport persons and property:

>  (i) to cities of the first class in accordance with the service authorized under its certificate of public convenience; and

>  (ii) from any point in a city of the first class to any point in this Commonwealth beyond that city of the first class if the request for service for such transportation is received by call to its radio dispatch service.

(2) Carriers currently authorized to provide service to designated areas within cities of the first class on a non-citywide basis shall retain their authorization through the authority. The authority shall not grant additional rights to new or existing carriers to serve designated areas within cities of the first class on a non-citywide basis.

Former 53 Pa. C.S. §5714(d).

Germantown Cab contends that the Parking Authority Law grandfathered its operating rights, and this is clear from the pre-2012 version of Section 5714(d). It created two categories of "other vehicles." The first includes vehicles with authorization to provide service in territories completely outside of Philadelphia. These vehicles may drop-off a fare in Philadelphia, but they cannot pick-up street hails in Philadelphia. The second category of "other vehicles" includes those vehicles authorized to provide service in territories that include designated areas of Philadelphia, such as Germantown Cab, as they did under their PUC certificate. Germantown Cab asserts that its PUC certificate allows it to pick up street hails, so long as the passenger's destination lies in Germantown Cab's

7

service area; this is the meaning of "vice versa" in its PUC certificate. In short, Germantown Cab believes it may provide hail service in Philadelphia, at least to customers seeking transportation to a place within its licensed service area.

The Parking Authority responds that Germantown Cab's "vice versa" argument is misguided. Partial rights taxicabs have never been able to pick up street hails in areas of Philadelphia outside of their PUC service area. Such a service would cause confusion to customers hailing taxicabs. Only after entering a taxicab would these customers learn whether they could be driven to their chosen destination. Further, the Parking Authority argues this claim has been waived as it was not preserved.

The issue raised by Germantown Cab is irrelevant. Recently, this Court held that the Parking Authority cannot impose its regulations on partial rights taxicabs operating in Philadelphia. *Bucks County Services, Inc. v. Philadelphia Parking Authority and Pennsylvania Public Utility Commission*, (Pa. Cmwlth., No. 584 M.D. 2011, filed November 28, 2016) (single-judge opinion by Brobson, J.). In that case, the taxicab companies argued that it was unreasonable and unduly burdensome for the Parking Authority to regulate their operations; they were only subject to regulation by the PUC. This Court found that the regulations treated medallion and partial rights taxicabs identically, without any consideration of the material differences in their operations. Accordingly, the Court held that the Parking Authority's regulations were invalid and unenforceable to partial rights taxicabs.

On January 3, 2017, this Court amended its original order in *Bucks County Services, Inc.* and declared nine specific Parking Authority regulations

8

invalid and unenforceable.[7] Included was Section 1017.5(b)(12) of Title 52 of the Pennsylvania Code requiring a taxicab to be equipped with a protective shield. 52 Pa. Code §1017.5(b)(12).[8]

Here, the trial court held that Germantown Cab was subject to the Parking Authority's regulations because it was acting outside its PUC certification. The Parking Authority fails to explain why this would subject Germantown Cab to a fine for not having a protective shield. It is inconsistent with precedent. For example, in *Germantown Cab Company v. Philadelphia Parking Authority*, (Pa. Cmwlth., No. 461 C.D. 2012, filed January 22, 2013), the Parking Authority fined Germantown Cab for operating outside of its designated service area.[9] This is the more appropriate response to unlicensed activity.

The PUC does not require partial rights operators to have a protective shield, and this Court has invalidated the Parking Authority's protective shield regulation as it applies to partial rights cabs. Stated otherwise, assuming Germantown Cab operated outside the service area in its PUC certificate, this does not subject it to a medallion taxicab regulation. Instead, it becomes a taxicab operating outside its PUC certificate and subject to penalties as delineated in

---

[7] The amendment was in response to the Parking Authority's motion for post-trial relief, claiming, *inter alia*, that this Court erred in finding its regulations invalid as a whole, when the taxicab companies had only challenged nine specific regulations.

[8] Also included were regulations related to vehicle age and mileage requirements, 52 Pa. Code. §1017.4; preservice inspections, 52 Pa. Code §1017.2; Parking Authority certificates of inspection, 52 Pa. Code §1017.32(d); Parking Authority biannual inspections, 52 Pa. Code §1017.31; meter seal inspections, 52 Pa. Code §1017.21(b); driver certifications, 52 Pa. Code §§1021.2, 1021.4(3), 1021.4(7), 1021.7, 1021.8 and 1021.9; out-of-service designations, 52 Pa. Code §1003.32; and the annual rights renewal process, 52 Pa. Code §1011.3.

[9] The fine was $500.

*Germantown Cab Company v. Philadelphia Parking Authority*, (Pa. Cmwlth., No. 461 C.D. 2012, filed January 22, 2013).

        Accordingly, the order of the trial court is reversed.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Germantown Cab Company,    :
       Appellant  :
           :
    v.       :  No. 993 C.D. 2016
           :
Philadelphia Parking Authority  :

# **O R D E R**

AND NOW, this 6th day of March, 2017, the order of the Court of Common Pleas of Philadelphia County, dated May 13, 2016, is hereby REVERSED.

_____
MARY HANNAH LEAVITT, President Judge